The next case on our agenda is number 6, number 129453, Dan Caulkins et al. v. Governor J. Robert Pritzker. Counsel for the appellant, are you prepared to proceed? Good morning. Assistant Attorney General Lee Jonig for the Defendant Appellants. I want to begin by identifying the claims at issue in this appeal. The circuit court held that the assault weapons and large capacity magazine restrictions in the Protect Illinois Communities Act violated the equal protection and special legislation clauses of the Illinois Constitution. Those are the claims that are at issue here. May I stop for one moment? Just in terms of security and procedure here, I'm going to ask that no one in the room use their cell phone during the oral arguments, please. Thank you. You may proceed. Thank you. In addition to those claims, in their brief, the plaintiffs pressed two additional claims which are not before this Court. The three readings claim was a claim that defendants prevailed upon in the circuit court and the plaintiffs did not cross-appeal. Consequently, this Court does not have jurisdiction. And as to the Second Amendment claim, which the plaintiffs pressed for the first time in their brief on appeal, they did not raise that claim in the circuit court. And thus, that claim is also not before this Court. So I'm going to spend most of my time talking about the equal protection and special legislation claims and then address the three readings and the Second Amendment claims that the plaintiffs pressed in their brief. Turning to those equal protection and special legislation claims, which are evaluated the same way, the circuit court erred in striking down the assault weapons and large capacity magazine restrictions for two independent reasons. First, the plaintiffs are not similarly situated to those who are permitted to keep assault weapons and large capacity magazines under the Act. Counsel, I'm going to ask you, what is the purpose of this legislation? The purpose of this legislation is to freeze the supply of assault weapons, kind of reduce their further proliferation throughout the state to, you know, increase public safety. So it sort of balances, you know, a public safety purpose with respecting the reliance interests of those who may have already owned assault weapons and large capacity magazines. Is it expressly stated? It is not. It's not stated on the face of the statute. And under rational basis, that's not required. Does the absence of express purpose excuse the plaintiffs from having to establish that they're similarly situated? No, it does not. Because this Court has, you know, long held that the similarly situated requirement is a threshold element of an equal protection claim. And it's applied that threshold element to, you know, to get past, to sort of strike down equal protection claims. That presented facial challenges to classifications on the face of the statute, just like the ones that the plaintiffs are making here. And are the plaintiffs similarly situated? They are not. So here we have kind of two groups that the plaintiffs sort of claim present an equal protection violation. And the plaintiffs are not similarly situated to either. With respect to those in the grandfather provision who already had assault weapons and large capacity magazines, the plaintiffs are not similarly situated to them, you know, to the extent that they don't already have assault weapons, because they don't have that reliance interest that people who already had assault weapons and large capacity magazines do. With respect to the seven enumerated professions in the law, the members of the general public are not similarly situated to those in those professions because members of those professions are sort of presumed to exercise greater responsibility in the safe handling and storage of firearms. And so consequently, members of the general public are not similarly situated to those two groups and are rendered unlike the groups that are specifically identified in the statute. And that's important because the reason that this Court has identified the similarly situated requirement as a threshold element of an equal protection claim is because the legislature is permitted to treat unlike groups differently under statutes. And so that's what is happening here. Counsel, let's assume that they get past that hurdle. Then what standard are we looking at in terms of rational basis or strict scrutiny? The Court would apply rational basis here. And that's for a couple of reasons. You know, with respect to the Illinois Constitution's equal protection claim, this Court has long recognized that that clause is interpreted the same way as the federal equal protection clause. Counsel, I'm wondering, though, and I know that it's your position that there is no claim pursuant to the Second Amendment of the U.S. Constitution, but they seem to be intertwined. This Court has recognized that the Second Amendment right is a fundamental right. Is that correct? Well, it's not correct in the equal protection context. It's true. This Court recognized that the right to bear arms is a fundamental right. I didn't add what you just added in terms of equal protection. Well, it's fundamental in the sense of, you know, like the use of that term in McDonald, for example, where the U.S. Supreme Court called the Second Amendment fundamental, but it wasn't talking about an equal protection claim at all. There was no equal protection claim or any sort of groups being treated differently in McDonald. What McDonald was holding was that the Second Amendment is an individual right. So when analyzing an equal protection claim, is it irrelevant what right is being challenged? So here we're talking about the Second Amendment right. The fact that it involves the Second Amendment right does not matter. It's always going to be rational basis. In the context of, you know, a firearms regulation that treats groups differently, yes, that would always be reviewed for a rational basis. And that's because, as these Federal courts have uniformly explained when they've encountered this very same question, that's because Second Amendment rights have their own protection in the Constitution. If you want to claim that your Second Amendment rights are being violated, you have recourse, and the plaintiffs just chose not to pursue that here. May I follow through on what you just said? I'm kind of a back-to-basics person. So on January 26th, plaintiffs filed an eight-count complaint. On February 21st of 2023, they filed a motion for declaratory judgment on counts four and five of the complaint and called this judgment on the pleading. So it seems the next step should be to look at count four and five and what was pleaded. Count four, declaratory judgment in that the statute violates the Equal Protection Clause of the Illinois Constitution. Count five, declaratory judgment that the statute violates the Special Legislation Clause of the Illinois Constitution. Neither is a claim that the statute violates the Second Amendment. But looking at count four, starting there, in paragraph 128 of the complaint, it is alleged, at issue is the infringement of a right to bear arms as guaranteed by the Illinois Constitution, Article I, Section 22. So I would think that's the next step, is that we should look at what it is that the plaintiffs pled and for which they are asking declaratory judgment. On count four, at issue is the Illinois Constitution, not the Second Amendment to the United States Constitution. That's the language in the pleading. This is judgment on the pleading. So let me ask you some questions about the Illinois Constitution, Article I, Section 22. It begins with a clause that uses the expression police powers. Can you answer two similar questions? One, what does the plain language of the Illinois Constitution, Article I, Section 22, mean by the use of the term police powers? And then secondly, in terms of plain language, how does that clause modify the rest of the language in the Illinois Constitution? So the subject of the police power clause of the Illinois Constitution's right to bear firearms in Article I, Section 22, means that the General Assembly can enact reasonable firearms regulations. And that's what this Court held in Kalidomos. And nothing about the more recent Second Amendment cases would change that analysis because the text of that Illinois Constitutional right to bear arms is different from the Second Amendment. And as this Court noted in Kalidomos... I'm sorry. Let me just interrupt briefly. I know you want to get back to the Chief's question. But I think it's important to point out the entire statement in Article I, Section 22. So it says, subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed. Do you agree that is the language? Yes, Your Honor. Thank you. And so what the drafting history of the Illinois Constitution right to bear arms, as this Court acknowledged and Kalidomos reflects, was that that right was always intended to be an individual right, unlike the Second Amendment where that was only recognized in Heller and McDonald. But it was also explicitly drafted to be subject to the police power where the General Assembly can enact reasonable regulations. And in Kalidomos, this Court kind of described what those regulations might be. It posited that, you know, even a categorical ban on handguns would be permitted under the Illinois Constitution's right to bear arms. But I also want to clarify here because the plaintiffs aren't bringing a stand-alone claim under the Illinois Constitution's right to bear arms either. They are bringing, as you noted, they're bringing they moved for a summary judgment on their equal protection and special legislation claims, the claims that they were being firearms regulations. And claims under those clauses are almost always reviewed for rational basis. They're reviewed for strict scrutiny only in limited circumstances, like when they present a suspect class or when they implicate, you know, fundamental rights that don't already have their own protections in the Constitution elsewhere. So and that's why, you know, the various Federal cases that we cite are important because they go to equal protection claims. And, you know, for example, the Seventh Circuit in Culp, what the courts in the court there was considering a firearms classification that treated certain out-of-state residents differently from in-state residents. And those plaintiffs wanted to get heightened scrutiny of their equal protection claim. And the Seventh Circuit said no, because they already had, you know, protections of their Second Amendment right specifically codified by the, you know, in that case the Federal Constitution, just like, you know, the plaintiffs here could have brought a Second Amendment claim if they had wanted to. So for this Court to apply rational, excuse me, strict scrutiny here, it would be departing from its long-held principle that the Illinois Constitution's equal protection clause is interpreted the same way as the Federal Constitution's equal protection clause. Roberts. That's what this case hinges upon, whether we apply rational or strict scrutiny basis. Isn't that the whole ball of wax in this case? Well, if the Court moves past the threshold element, which, again, this Court has described as kind of the first step of the similitude requirement, then, yes, the next question would be what level of scrutiny applies. Counsel, let me ask you about Rodriguez, and then I want to refer to this Court's decision in Edgar. In Rodriguez, didn't they, in looking at whether or not education was a fundamental right for equal protection, well, for protection, they looked at whether or not it was fundamental? That's correct, yes. And so you say we are not to do that here? Well, no, what I'm saying is that, you know, this question about whether the Second Amendment is considered to be fundamental in the context of equal protection has sort of already been answered by the, you know, if this Court were to continue applying the lockstep principle that the Illinois Equal Protection Clause is interpreted the same way as the Federal Equal Protection Clause, then, you know, that question has already been answered. You know, with respect to fundamental rights, what the Court was considering, you know, about whether education is a fundamental right in that case, that's because the Federal Constitution doesn't enumerate a right to an education as its own right. And so that's what, you know, when we talk about protecting fundamental rights in the Federal Equal Protection context, they're generally rights that are not already protected in the Constitution. So, you know, again, here, so in the context of, you know, the right to an education, really the only way a plaintiff could protect those rights is by, you know, hearkening to these more generalized protections of equal protection or substantive due process. But in the Second Amendment context, a plaintiff has a way to protect those rights. That's by bringing a claim under the Second Amendment. And that's why, you know, the Second Circuit in Culp and all of the other Federal courts that we cite say that you, if you want to get, you can still bring an equal protection claim based on firearms regulations and being treated differently, but it's reviewed for rational basis. Because if you want heightened protections, those are protected elsewhere.  Why are we talking about the Second Amendment at all when Paragraph 128 of the complaint limits this claim to the Illinois Constitution? Because the plaintiffs, so it's true that when the plaintiffs brought their claim, the only kind of path to strict scrutiny that they put forth was the Illinois Constitution's right to bear arms. It's a judgment on the pleadings of Count 4 and 5. Count 4, the words Second Amendment, appear nowhere. The only reference to any constitutional right is the Illinois Constitution. Perhaps they're making an argument, and maybe that could be made in the Federal court, but that's not what they pledged. And we agree with that, Your Honor. And that was the basis of, in fact, the Circuit Court's judgment here says that, you know, that it was applying strict scrutiny because it held the Illinois Constitution's right to bear arms warranted that. We explained in our brief that that is, you know, directly contradicts Kalidomos, and nothing about, you know, Second Amendment cases would suggest that that holding would change because those two different rights to bear arms are different. Counsel, I'm taking you way back, but could you tell me if the Circuit Court addressed the similarly situated element? Can we start there? Did that happen in the Circuit Court? It did not, no. Okay. So, and what happened in the Appellate Court as to that issue? Well, this is a direct appeal from the Circuit Court. So, but in, you know, in this case, the Circuit Court directly relied on the Appellate Court decision on accuracy firearms, which involved a very similar complaint. And there, too. Now, I just want to know if the Circuit Court addressed that element, because I think that's a threshold. We all agree that that's a threshold. So how did you get past that and end up here without that ever being addressed? I mean, I think, as we say in our brief, the similarly situated requirement is a threshold element. And the fact that the Circuit Court didn't address it, and the plaintiffs, you know, don't put forth any explanation for why they are similarly situated, is alone a reason for this Court to reverse. And it doesn't need to get into the question of levels of scrutiny or fundamental rights or anything like that. I, you know, and just to be sort of, I do want to address the Circuit Court's excuse me, this Court's decision in Ali, because that was something that the accuracy firearms decision relied upon, and that's what, you know, as I said, that was really the only thing that the Circuit Court relied upon. Ali was about the uniformity clause. And this Court has long held and reiterated in Ali that the uniformity clause is a broader protection than the equal protection clause. And so it makes sense for, you know, there to be a lower threshold to kind of get to heightened scrutiny in the context of the uniformity clause. And to, you know, apply strict scrutiny here just, you know, for that reason would essentially collapse the distinction between those two protections. I do want to briefly ---- But we agree that the ordinance, and this was about a tax on the sale of ammunition, and whether or not it burdened the Second Amendment rights under the United States Constitution. That was the issue in Ali. And we said, we agree that the ordinances impose a burden on the exercise of a fundamental right protected by the Second Amendment of the United States Constitution. The words Illinois Constitution, Section 1, or Article 1, Section 22, I don't believe it appears anywhere in the analysis in Ali. That's correct. The Court ---- Ali was solely about the uniformity clause. And I see my time is elapsing. So I do want to move on briefly to the rational basis analysis. The plaintiffs haven't put forth any, you know, authorities that would suggest that, you know, a grandfather provision that permits, you know, in which a legislature kind of goes not, you know, so far as, you know, taking away existing assault weapons would be irrational. Nor do they point to any authority that would suggest that, you know, taking into account the profession of these, you know, the particular professions identified in the Act would be irrational when you're talking about firearms regulations. And then now to get to the two new claims that the plaintiffs raised in their brief. The three readings claim, as I said earlier, the Court does not have jurisdiction over that claim because the plaintiffs did not cross appeal. You know, for this Court to reverse the judgment of the Circuit Court on the three readings claim would be to expand the relief that the plaintiffs received in the Circuit Court because the Circuit Court only held unconstitutional a limited part of the Protect Illinois Communities Act, whereas prevailing on the three readings claim would hold, you know, that many other firearms regulations that were in that Act unconstitutional. Are we able to affirm on any basis that's supported by the record? That is true. But what the Court cannot do is expand the judgment when the plaintiffs did not cross appeal because this Court has, you know, as Rule 303 recognizes, filing a cross appeal is a jurisdictional requirement. And that is what the plaintiffs did not do. And even if the plaintiffs, excuse me, even if the Court did have jurisdiction, the Enrolled Bill Doctrine forecloses the three readings claim. In any event, the three readings requirement was followed here, as we explained in our brief. And then finally, to just touch on the Second Amendment claim, as we explained earlier, the plaintiffs did not raise that in the Circuit Court. So if the Court has no further questions, we ask the Court to reverse the Circuit Court's decision in validating the Assault Weapons and Large Capacity Magazine restrictions. Thank you very much, Counsel. Counsel, if you have a plea. Jerry Stocks on behalf of each of the plaintiffs and my partner, Brian Eck. May it please the Court. First, I would like to address the content of our pleading. Paragraphs 2, 135, 136, and 157 expressly invoke the Second Amendment. What paragraph, Brian? Paragraphs 2, 135, 136, and 157. 136 invokes it by express citation to McDonald. It cites McDonald. It cites McDonald. Does the word Second Amendment appear anywhere on the fourth count? No. It cites McDonald. What does 128 mean? Paragraph 128 where you say at issue is the Illinois Constitution. It is at issue, but it is not exclusively at issue. So tell me again. Where else do you cite the Second Amendment? You will find the right to bear arms at 135, McDonald at 136, which is exclusively Second Amendment, and at 157 in the special legislation argument, special legislation expressly stated. Should we discuss that paragraph in the special legislation? Sure. You do talk about the Second Amendment there, don't you? In paragraph 157, you say the Second Amendment protects the additional right to only back up from it. Count 5 does not read like count 4. It doesn't seem to be about the right to keep and bear arms. All of the statements here about economic entities and sale of arms and economic franchise and gun sales, nothing here seems to be about the right to keep and bear arms, but rather about the economic impact of the statute. That's what my reading of 5 is about. You say in 157 the Second Amendment protects the additional right to commercial and noncommercial sale of arms. And for that, you cite Heller. Now, you don't tell us what page that's on in Heller, but my reading of Heller is very different. I read Heller on page 2100, 16 to 17, that Justice Scalia says this. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, for laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of guns. You say Heller says that the Second Amendment protects the sale of guns, and that's not how I read what Scalia wrote in the opinion. I said noncommercial sale of guns. And as we have in this case, we're dealing with regulation of noncommercial transfer, possession. You said commercial or noncommercial. So now you're narrowing your count five to not just the state. I have a number of places to say things about sale, the economic franchise, and gun powers. I also re- In count five, you no longer are talking about the broad idea of the rights to sell guns. What are you talking about in count five? Not true. I incorporate the entirety of count four into count five because equal protection and special legislation overlap, save they're not coterminous because of the applicability of can we write a general law would be the additional element to a special legislation challenge. But every fact that is in the equal protection cause of action, every last one of those facts is included in the special legislation. And the word additional is not replace everything I already have stated. It is saying that we have additional rights that are implicated by this statutory scheme that not only invades the right to possess firearms in the home, which is undisputedly a protected right, but it is reaching broader to create how we can do noncommercial transfer, inheritance even. It is permeating a whole range of transactions in a patchwork manner. I'll finish my last question. What is in count five? I don't understand count five. So I need some help here. What is the similarly situated group in count five? Can you be precise as to that? The similarly situated group that is common to everyone is that they all have the fundamental individual right to keep and bear arms. And at its least disputed, they have that fundamental individual right to keep and bear arms in their home for confrontation and self-defense. Counsel, I'm asking you the same question. Did the trial court address that threshold issue? The trial court embraced accuracy. No, did they address it? I'm not talking about embracing. Did the trial court address that threshold issue? I argued it. I know that they said accuracy was controlling precedent. Accuracy had it. Accuracy's finding was they were all the same before this legislation, so they must have been similar. But in our arguments and our presentations below, we did expressly argue time and again and again. I'm not asking what you argued. Did the trial court address it? That's just a yes or no, please. Yes. I mean, it's not expressed in the order as a specific finding, but this is a de novo review. What they expressly stated in their order is not a restraint or restriction. It's what's in the record. It's what has been argued. As the Grieco case, it is what is implicit in the arguments that we have made. This case, certainly, the case is now in our take is that the state or the defendants would like to avoid confronting the issues head-on. Because confronting the issues. Counselor, can I ask you, you agree that a threshold consideration for this court is whether or not the parties are similarly situated. Do you agree with that? There's a threshold before that, but I believe the first question presented is, does the Second Amendment or Article I, Section 22, which we cannot dilute with the Illinois Constitution, the federal constitution as to the Second Amendment, is would it tolerate either the prohibitions or the regulations that we have? If the answer is no to that question, this case is over. I'm really sorry. I'm a back-to-basis kind of person. So you start with the right? You don't start with the analysis of what equal protection and special legislation is about? What is being disparately treated but the right? You have to know what the right is so that we can start to figure out, have we discriminated in the enjoyment and exercise of that right? So merely saying people are different means nothing unless we understand why are they being discriminated in their treatment. And that requires an understanding of the right that is infringed or the subject of discrimination in the classifications created by the statute. And here we have it. Counsel, in this statute, there are seven categories of exempted individuals, all of whom must undergo training to maintain their exempt status. And in this case, the plaintiffs, you're saying, well, they have FOID cards, correct? They have the right to bear arms for self-defense in the home. The FOID card doesn't give them that right. The FOID card is just a mechanism by which the state can assure that they're not otherwise disqualified. You know, the FOID Act is written in a very negative sense in that manner, is that because the state doesn't have the power to decide whether you have Second Amendment rights, that was codified and preexisted any power of the state. So the FOID Act is simply saying that these plaintiffs have established that they are not disqualified from a right that was codified and that the legislature, the courts, cannot take from them because it preexisted everything. But how are these plaintiffs similarly situated to the exempt individuals? They all have FOID cards. They all have the Second Amendment right to keep and bear arms in their home. And Bruin has even gone, and Caetano has gone farther to say that that right of confrontation may extend beyond the home. But for purposes of this case and the arguments below, we are out to protect where they are all similarly situated to have Second Amendment or Article I, Section 22 rights in their home, which is the right to keep and bear arms of common use. And that is a prima facie case, which, when we get back to the pleadings, is that the prima facie case is established. And under Bruin, once the prima facie case of that protected right is established A prima facie case of what? Of the second Equal protection or special legislation? Of the right that is being discriminated, which is the right to keep and bear arms. We then move to the question, does this statutory scheme, does it, if we can tolerate that first level of regulation, does this statutory scheme treat the similarly situated, those persons enjoying those rights, differently? And that test In terms of the right. So you say we start with the right. Whether it's the Second Amendment right or the Illinois Constitution, we start with the right and not the sections of the Illinois Constitution about equal protection and special legislation. We don't look at that until we start with what is the right, correct? True. That's what you say. All right. Has the United States Supreme Court or any court of appeals across this country said that there is a constitutional right to keep and bear assault weapons? The three cases have been handguns. However, we'll go to Heller, McDonald, and Bruin, and Caetano, those four cases. But they say that the right to bear arms is applicable, as we have in our brief, to bearable arms of common use. So we have to decide that huge question first before we get to special legislation or equal protection? No, because we are here on a pleading that they demerge to where those are the allegations. Those facts are established in this case. That is what is, as we've come through and wondered, why have they decided to defend in the manner they've defended? But we have a pleading that states under McDonald, Heller, and Bruin, that we have made the prima facie case of a bearable arm of common use. That's why when we were arguing the issues below, if they don't invoke that there is a historical tradition of regulation, not the plaintiff, Bruin expressly states, and they misquote Bruin on page 2 of their rebuttal brief, but Bruin expressly states at page of the lawyer's edition, where I'll read the quote, that the respondents in that case, the defendants, had the burden of establishing that it was within the historical tradition of firearm regulation. So let me ask you about Bruin, so that we can figure out how that case fits into this. Bruin is, of course, a direct argument about a violation of the Second Amendment, unlike what we have here. But we know that in Bruin, the United States Supreme Court abolished the whole ends-means analysis. We're not going to talk about rational basis anymore. We're not going to talk about scrutiny anymore when we talk about a violation of the Second Amendment. In your view, what does that do to our traditional understanding of equal protection and special legislation under the Illinois Constitution? The way I can see, the alternative way I can see it unfolds in this case, is that where are we if there is a level of regulation that would be permissible under the Second Amendment? For example, and illustrating in this case, a registration or an endorsement affidavit as to all assault weapons. Let's assume that that could be, in and of itself, constitutional. That would require us to then take the next step, is does this statutory scheme still nonetheless violate equal protection or constitute special legislation because of the classifications of the persons they have established? Now, the Second Amendment becomes no less fundamental under those circumstances. It is still a fundamental right. And upon that declaration of that right, we are now under a strict scrutiny, or even in our Culp v. Raul, that was heightened scrutiny. It was not rational basis. So that is the context where we could get there. But, in fact, O'Brien completely abolished the idea of a rational basis and strict scrutiny in Second Amendment cases. Correct? Why does it remain viable, then, if you're saying the first thing we have to discuss is what is the right under the Second Amendment? Why, then, are we holding on to those ideas that we've used for years in terms of equal protection and special legislation? Well, as I stated in my brief, if you find that the Second Amendment does not tolerate the classification of the persons in any respect because it violates the Second Amendment, this case is over. However, if there is a regulation that could be tolerated by the Second Amendment, which, as they have all suggested, there could be a range. They're not saying that the Second Amendment forbids all regulation or prohibition in all instances, all places, sensitive places, mentally infirm. When you look at the Second Amendment, that doesn't make the Second Amendment less fundamental. What it does is say that there's a historical tradition that would tolerate a prohibition. We do not advocate, nor do we believe, that the Second Amendment tolerates in any manner these prohibitions of assault weapons based on the mere fortuity of when you may acquire them. But setting that aside, if everyone would have to regulate their firearm because of the purpose that we want to keep track of where those arms are. Equal protection requires that that fundamental individual right be applied to all citizens the same, because it is an individual right. It is not a status of employment. It is not a special immunity or benefit. I mean, these are criminal statutes. And we're immunizing folks that have absolutely no difference in the enjoyment of the Section 22, whichever prism we want to view this, than anyone else. But we are creating winners and losers in special legislation when, if the Second Amendment tolerates that type of prohibition or regulation at all, it should be by general law, which walks right into the special legislation prohibition, Article 4, Section 13, which was not part of accuracy firearms. So, counsel, the special legislation clause prohibits an arbitrary classification. And in this case, the classification is based on people, the training of the exempt individuals, and that they continue to maintain that training while they maintain their exempt status, as opposed to just everyone else. Is that an arbitrary? It is arbitrary, because consider this. A military veteran is trained, but he can't have that weapon to protect his family at home. A security guard may or may not be trained, but he has it only while he works. Heller and McDonnell both say the Second Amendment elevates above all interests. It's not tolerating interest for a police officer, interest for a security guard, interest for a prison warden, interest for whatever, or here, the most glaring offense, for the grandfathered. There is no reason to conclude, but on an arbitrary basis, that the grandfathered are any better trained or safer than those that would acquire the weapon later on. Mr. Stocks, so I want to make sure I understand what you say should be our analysis in this matter. And so you rely on Bruin, and so the first step is we have to determine whether or not the Second Amendment's plain text covers the individual conduct, so having this weapon, having this ammunition. There's a presumption, correct, under the Constitution, that it does cover that. I concur. Okay. Prime aphasia case. And so then the burden falls to the state to justify the regulation by demonstrating that it's consistent with the nation's historical tradition of firearm regulation. I agree. If they don't establish that, then we're done. You're done. And if they do... Or isn't that the analysis in the federal cases, when there's a direct challenge to the Second Amendment? Bruin, et cetera, are all about the Second Amendment. That's not what you brought. You framed this in a totally different way. You could have joined the three cases, the federal cases. You chose to shape it in a different way, like special legislation and equal protection. It's a much different analysis. It is not. You cannot even begin to address the grounds that are in this complaint without addressing and finding what the Second Amendment says in this case, on both ends. So have you been arguing all the way through that the burden is on the state to come forward with historical analog? I have argued that the Second Amendment creates a fundamental right. I don't remember every statement, but it has been in every brief. So this is the first time that you've argued that in this Court? No, no. I've argued this in the trial court. But the historical analog. Yes, the Bruin is in my motion for declaratory judgment on the pleadings. Where? I don't think it says anything about historical analog. I don't see those words anywhere in your motion for judgment on the pleadings. Bruin is cited. Bruin is stated that there is, yeah, the historical tradition is in the brief. That was on the motion for declaratory judgment. I mean, the Second Amendment was present. It has to be resolved or you can never address any other issues. My time is up. Thank you. Counsel? Counsel? Just a few points in rebuttal. First, with respect to whether the complaint states a standalone Second Amendment claim, it does not. None of the labels, you know, say anything about the Second Amendment. In the TRO motion, it lists all the claims. None of those say anything about the Second Amendment. You know, the paragraphs that counsel identified go to urging the court to apply strict scrutiny. And I would point this Court to the memorandum in support of the TRO motion on page 236 of the record where the plaintiffs say this is not a case about, you know, the historical test that Bruin put forth. That debate is engaged in Federal court. That's what the plaintiffs said. And so, you know, and again, in their, you know, motion for judgment on the pleadings, they, you know, on page 513 of the record, they say we're bringing an equal protection claim here. There might be other bases where this law could be unconstitutional. For example, and then they say Bruin. And so it's true that they say Bruin in their briefing, but it's to say we're not bringing a claim under Bruin. And I think, you know, looking to the Bruin test itself, if anything, it supports all of the Federal courts of appeal that have said, you know, a Second Amendment you can't bypass a Second Amendment claim by trying to get heightened scrutiny in the equal protection context, because Bruin, you know, completely changed the test for a Second Amendment claim, where it's now a textual and a historical test that both parties have a burden to, you know, present evidence for. You know, the plaintiffs have to present evidence that, you know, the particular restriction, in this case, assault weapons. Sotomayor, I'm still stuck at similarly situated, because to me that's the threshold issue. And I asked your opponent, so can you tell me what, how the trial court addressed that? It did not address it, and you anticipated one of my other points. The trial court did not address the similarly situated requirement. It is true that the trial court cited accuracy firearms. Accuracy firearms did not address the similarly situated requirement. As the dissent in accuracy firearms noted, the dissent in accuracy firearms said we shouldn't even be getting to this level of scrutiny stuff here because they haven't met their burden at the threshold element. Then with respect to the, you know, this suggestion that we start with the right as opposed to starting with the similarly situated requirement, there's no authority that would suggest that. This is, and again, there's, there have not been, we're not aware of any cases, you know, in Federal court or in this court that have suggested that when you bring an equal protection claim based on different treatment and firearms regulations, you get strict scrutiny. No Federal court has done that. And, you know, and in fact, this court in Moseley did the opposite, which is a case that we cite in our brief, where in Moseley, this court applied rational basis to a classification based, you know, in, within a firearms regulation. And so that would be, you know, more precedent that this court would be jettisoning if it were to apply strict scrutiny here. And then with respect to, I do want to kind of address rational basis here because there was some suggestion that, you know, there might be better classifications than the ones that the legislature picked. But under rational basis, the legislature doesn't have to pick the best possible classification. It only has to pick a rational one. And with respect to, you know, the grandfather provision, too, we've never suggested that, you know, people who already possess assault weapons are, you know, better trained than, you know, other members of the public, but what they do have is they already own. And this court and other courts have recognized that that is a permissible interest for the legislature to take into account when it's crafting policy. Legislatures don't have to take the biggest step in addressing a policy problem. They can proceed, you know, smaller, more measured, one step at a time. And that's what the legislature did here. And then, you know, I do want to kind of go back to this question of the Second Amendment, because the plaintiffs, you know, as I said earlier, they did not plead a Second Amendment claim. There was, you know, their briefing expressly disclaimed it. And, you know, there was nothing in the record that, you know, went toward the Second Amendment test, which is completely different from the means ends test that we apply in an equal protection claim. And if anything, what the – what Bruin does by expressly saying, don't apply means ends scrutiny in the context of the Second Amendment, it reaffirms all of the Federal Court of Appeals cases that we cite, like Culp and like, you know, the Second Circuit in Quong, that say you can't use the equal protection clause to kind of bypass the appropriate Second Amendment analysis. That's even more true now when we know that the Second Amendment test is completely different than the test under the equal protection claim. So because the plaintiffs here, you know, strategically decided not to bring a Second Amendment claim, they expressly disclaimed it, they didn't present any evidence, you know, to support the Bruin test, the circuit court didn't address it. There's no reason for this court to address this claim for the first time on appeal. So if the court has no further questions, we ask the court to reverse the circuit court's judgment.